# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RICKY R. STALLINGS, JR. # 331-230 | * |
| Plaintiff, | * |
| v | * Civil Action No. JFM-14-2061 |
| WARDEN FRANK BISHOP, | * |
| NORTH BRANCH MEDICAL DEPT.[1] | * |
| PA JANETTE CLARK, | * |
| COLIN OTTEY, | * |
| JANICE GILMORE. | * |
| Defendants. | * |

## MEMORANDUM

Pending is Ricky R. Stallings, Jr.'s complaint filed pursuant to 42 U.S.C. § 1983 against Warden Frank Bishop,[2] North Branch Medical Department, Janette Clark, P.A., Colin Ottey, M.D., and Janice Gilmore, HSA. (ECF 1, 4). Defendants Janice Gilmore, Colin Ottey, and Janette Clark (collectively referred to as "medical defendants"), by their counsel have filed a motion to dismiss or, in the alternative motion for summary judgment (ECF 21) to which Stallings has filed an opposition response supported by his affidavit. (ECF 26). Also pending is a motion to dismiss or, in the alternative for summary judgment filed by counsel on behalf of Warden Frank Bishop (ECF 30) and Stallings' opposition response thereto. (ECF 33).

---

[1] North Branch Medical Department is not a "person" subject to suit under 42 U.S.C. § 1983. *See e.g. Allison v. California Adult Authority*, 419 F.2d 822, 823 (9th Cir.1969) (California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); *Powell v. Cook County Jail*, 814 F.Supp. 757 (N.D.Ill.1993) (jail not subject to suit); *Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 836 (S.D.N.Y.1994) ("jail is not an entity that is amenable to suit"). Therefore, North Branch Medical Department is dismissed as a defendant in this proceeding.

[2] Bishop was the warden at North Branch Correctional Institution at the time Stallings filed the complaint. Currently, Bishop is the Acting Executive Director for Maryland's north region prisons. (ECF 1, 30-7). *See* http://www.dpscs.state.md.us/locations/nbci.shtml.

## INTRODUCTION

Stallings, an inmate at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, is suing Defendants for failing to provide him with adequate medical care for gastrointestinal problems. As redress, he requests examination by an outside medical provider and a total of $500,000 in damages for pain and suffering and medical neglect.

## LEGAL STANDARD

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir.2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir.1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

Stallings was provided notice of defendants' dispositive motions and an opportunity to respond with verified exhibits and declarations consonant with the holding in *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975) (holding self-represented plaintiffs should be advised of their right to file responsive material to a motion for summary judgment), and replied to the dispositive pleadings. (ECF 23, 26, 31, 33). The court will therefore treat defendants' dispositive pleadings as motions for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure states a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Ricci v. DeStefano*, 557 U.S. 557 (2009), but must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).

The court is mindful that Stallings, a self-represented litigant, is "held to a 'less stringent standard than is a lawyer, and must liberally construe his claims, no matter how "inartfully" pled." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims by self-represented litigants should be held "to less stringent standards

than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same).

## DISCUSSION

### The Medical Defendants

The medical defendants have filed verified copies of Stallings' medical records and an affidavit executed by Colin Ottey, M.D., Medical Director at NBCI, in support of their dispositive motion. (ECF 21-4, 21-5). Ottey attests he has "personally evaluated" Stallings as "one of his treating physicians." (ECF 21-5 ¶ 3). The medical records are summarized by Dr. Ottey in his affidavit and provide the following information.

On March 7, 2013, Stallings was seen by Greg Flury, P.A. for a follow-up visit for an injury his right index finger. During the visit, Stallings complained of chronic constipation.[3] Flury prescribed a laxative (docusate sodium, also known as Colace), hydrocil instant (a fiber preparation), and magnesium citrate[4] to treat the constipation. Flury also ordered x-rays of Stalling's abdomen and scheduled a follow-up visit. (ECF 21-4, pp. 1-3). Dr. Ottey attests the x-ray showed fecal matter in the large intestine, suggestive of constipation. (ECF 21-5, ¶ 11). No acute abnormalities were observed. *Id.*

On April 3, 2013, Ava Joubert, M.D. saw Stallings for his complaints of constipation. (ECF 21-4, pp. 4-5). Stallings reported he had not moved his bowels in more than a month and dietary changes aggravated his constipation. *Id.* Stallings denied experiencing back pain, bloating, change in appetite, nausea, vomiting, weight loss or black or tarry stools. *Id.* Joubert noted Stallings' blister pack of Colace was nearly full, indicating that he was not compliant with

---

[3] Between July 1, 2012 and March 6, 2013, there is no record of Stalling complaining of constipation. (ECF 21-5). The court notices that Wexford Health Sources became the current provider of health care at NBCI on July 1, 2012.

[4] The medical defendants explain magnesium citrate is a naturally occurring mineral that increases water in the intestines and is used to treat occasional constipation. *See* ECF 21-1. n 5, citing http:/www.drugs.com.

his medication regimen. *Id.* Stallings explained to Joubert that he didn't take the medicine because his stool was not hard. *Id.* Stallings added his stool "just doesn't want to come out." *Id.* Upon physical examination, Stallings' abdomen was observed to be soft and non-tender. *Id.* His rectum was normal to inspection and palpitation. *Id.* His stool was observed to be brown and soft. *Id.* Joubert prescribed an additional laxative, Dulcolax, in addition to Colace and hydrocil instant. *Id.* Further, Joubert advised Stallings to increase fluid intake and ordered a barium enema if he showed no improvement. *Id.*

On May 2, 2013, Flury met with Stallings for a follow-up visit for his complaints of constipation. *Id.* at 6-8. Stallings reported that his symptoms had improved and he was having bowel movements three to five times per week. *Id.* He stated his last bowel movement was the previous day and that his stool was normal. *Id.* Accordingly, Flury did not renew Stallings' laxative prescriptions.

On May 3, 2013, Stallings submitted a sick call slip complaining of difficulty "going to the bathroom" and indicating the medication prescribed for him was ineffective. *Id.* at 36. Stallings requested to be seen by an outside specialist. *Id.*

On June 6, 2013, Joubert met with Stallings for his constipation complaints. Stallings described his stool as hard, thin and aggravated by stress. *Id.* at 9-10. He denied abdominal pain, anorexia, back pain, bleeding, bloating, burning, change in appetite, nausea, vomiting, weight gain, weight loss, pain with passing stool, change in stool pattern, sedentary activity, black/tarry stools and change in medications. His abdomen was observed to be normal. *Id.* Joubert placed Stallings on Dulcolax, a laxative, and referred him for a follow-up visit in one month. *Id.*

On October 14, 2013, Kristi Cortez, R.N. saw Stallings for a routine physical which included occult blood-stool testing. *Id.* at 11.[5] The test results were negative. *Id.*

On October 15, 2013, Katie Winner, P.A. saw Stallings for a periodic physical examination, the result of which were unremarkable. (ECF 21-5, ¶17). The medical report noted Stallings' history of constipation. (ECF 21-4, pp. 13-15).

On November 6, 2013, Stallings submitted a sick call slip, stating the medications and supplements prescribed by the medical providers were ineffective (ECF 21-1, p. 37). The medical defendants note this was his first sick call slip for constipation since June of 2013.

On November 8, 2013, Krista Swan, R.N. saw Stallings for his constipation concerns. Stallings complained of difficulty "going to the bathroom" for the last several days. (ECF 21-4, p. 16). Stallings denied having blood in his stool. Swan placed Stallings on hydrocil instant and Colace and advised him to increase fluid intake. *Id.*

On November 24, 2013, Swan saw Stallings at a follow-up visit for unrelated shoulder complaints. During that visit, Stallings indicated his constipation had improved, denied being constipated at that time, and reported the Colace and hydrocil instant were effective. *Id.* at 18.

On December 4, 2013, Stallings filed a sick call slip complaining, among other issues, of constipation. Stallings asserted he had been complaining about constipation for over one year, and he requested to be seen by a medical provider. *Id.* at 38. It was noted that Stallings was seen

---

[5] The fecal occult blood test is a lab test used to test stool samples for the presence of blood. Occult blood in the stool may indicate colon cancer or polys. *See* http://www.mayoclinic.org/tests-procedures/fecal-occult-blood-test/basics/definition/prc-20014429

the same day by a medical provider for issues unrelated to constipation. *Id; see also* ECF 21-5 ¶21.[6]

On January 12, 2014, Kimberly Martin, R.N. saw Stallings for constipation complaints. *Id.* at 24-25. Stallings reported that he sometimes went for seven days without moving his bowels, and could not recall his most recent bowel movement. He indicated the medications provided to him were ineffective, and that he was using another inmate's fiber packets (hydrocil). *Id.* Stallings refused any of the medications previously prescribed for him because they were ineffective. *Id.* He asked to go "somewhere and get this taken care of." *Id.* at 24. The medical report shows Stallings' abdomen was soft with active bowel sounds. He refused milk of magnesia or another laxative. Martin noted Stallings was not in any distress at that time. *Id.*

On January 25, 2014, Stallings filed a sick call slip for complaints of constipation. *Id.* at 40. That same day Stallings refused to be seen by a nurse for his complaint. *Id.* at 26. A release of responsibility was completed. *Id.* at 26, 46-47.

On February 24, 2014, Stallings refused to be seen for his provider sick call visit with Dr. Ottey. *Id.* pp. 48-49. A release of responsibility form was completed. *Id.*

On March 10, 2014, Stallings placed a sick call slip complaining of stomach and neck pain and requested to be seen by an outside provider. *Id.* at 41. On March 18, 2014, Nurse Martin saw Stallings for his complaints. Stallings reported his "bowels are still all messed up." *Id.* at 27. He complained of having only one bowel movement per week. Martin noted Stallings had been provided laxatives in the past. He was told to place a sick call if his symptoms did not improve. *Id.*

---

[6] Dr. Ottey saw Stallings on December 2, 2014, for unrelated complaints of throat and right shoulder pain. (ECF 21-4, p. 21). The throat pain appears to have been associated with an injury Stallings sustained several years earlier. (ECF 21-4, p. 27).

7

On March 28 and April 2, 2014, Stallings submitted sick call slips which included complaints of constipation. *Id.* at 42, 43. On April 6, 2014, Stallings informed Dawn Hawk, R.N. that he was having only one bowel movement per week. *Id.* at 29-30. Stallings indicated stool softeners, fiber packs, and milk of magnesia and were ineffective. *Id.* The medical report noted Stallings was in no distress and his abdomen was soft and non-tender upon examination. *Id.* On March 29, 2014, Stallings was provided Colace and hydrocil instant. *Id.*

On April 16, 2014, Stallings submitted a sick call slip complaining of constipation and flatulence. *Id.* at 44. On April 18, 2014, he was seen by Nurse Swan. He told her that he sometimes goes more than one week without having a bowel movement. *Id.* at 31. He denied blood or pain with bowel movements, but indicated he becomes nauseous after going three to four days without a bowel movement. *Id.* He indicated having a bowel movement on the previous day. Swan referred Stallings to a medical provider for further evaluation and treatment.

On April 22, 2014, Janette Clark, N.P. met with Stallings who described his constipation as gradual and presenting as a feeling of fullness that occurs daily. *Id.* Stallings also stated he experienced pain and nausea. *Id.* Stallings denied anorexia, back pain, bleeding, bloating, burning, change in appetite, flatulence, thin stools, vomiting, weight gain, weight loss, pain with passing stool, change in stool patterns, sedentary activity, black/tarry stools and changes in medications. *Id.* Clark placed Plaintiff on Lactulose and Reglan. *Id.*[7] Stallings was advised to follow up if the condition did not improve within thirty days. *Id.*

Dr. Ottey attests in his medical opinion and to a reasonable degree of medical certainty, the care and treatment provided to Stallings for complaints of constipation were medically appropriate and within the applicable standard of care based on Stallings' clinical presentations,

---

[7] The medical defendants describe Lactulose as "a type of sugar that when broken down draws water into the large intestine and is used to treat chronic constipation." They indicate Regulan increases muscle contractions in the digestive tract. ECF 21-1 nn.9,10 (citing http://www.drugs.com).

which did not include abdominal distension or tenderness. (ECF 21-5 ¶ 33). Ottey states that because Stallings denied symptoms which could indicate an underlying medical process other than constipation, it was determined referral to an outside specialist was unnecessary. *Id.*

Dr. Ottey also attests that Janice Gilmore is employed by Wexford Health Sources as the Regional Administrator for NBCI. In this capacity, Gilmore coordinates staff assignments, purchases, and allocation of equipment. She does not directly deliver medical care to inmates or make clinical medical decisions concerning inmates. (ECF 21-5 ¶ 5-7).

Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person ... to the deprivation of any rights...." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights ...") (quoting *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D. Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Here, there is no dispute that Janice Gilmore does not make clinical medical decisions concerning inmates, and thus had no personal involvement in Stallings health care.

To be sure, supervisory liability may be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Stallings alleges not facts to suggest Gilmore is culpable under a theory of supervisory liability.

It is undisputed that Gilmore had no personal contact or interaction with Stallings or otherwise. Absent any personal involvement in the medical care at issue, Gilmore is entitled to summary judgment in her favor as a matter of law.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir.2003), citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As the United States Court of Appeals for the Fourth Circuit recently explained in *Jackson v. Lightsey*,

775 F.3d at 170, 178 (4th Cir. 2014), deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."

Therefore, "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. This as an "exacting standard...." *Id.* Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n. 8 (4th Cir. 2014).

As noted, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir.1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk

the defendant actually knew at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

If a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Makdessi v. Fields,* 789 F.3d 126, 133 (4th Cir. 2015), citing *Brice*, 58 F.3d at 105. "A prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence...." *Makdessi*, 789 F.3d at 133.

Of import here, "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." *Lopez v. Green*, 2012 WL 1999868, at *2–3 (D. Md. June 4, 2012) ( citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *see Wester Jones*, 554 F.2d 1285 (4th Cir. 1979). Although the Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs, it does not require that a prisoner receive medical care by a provider of his choice. The right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977). Moreover, "any negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a medical provider linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

Stallings' medical records demonstrate he has received continuing care and attention for his complaints of constipation, including examination, x-rays, and prescriptions for various medications. His prescriptions have been changed when Stallings has complained about their efficacy. The fact the constipation did not immediately disappear is not indicative of any intentional or indifferent treatment to Stallings' needs, nor does it establish a deliberate indifference. Dr. Ottey attests that in light of the absence of other medically associated concerns, it is his medical opinion that an outside referral is not indicated. Stallings complaints reflect his disagreement with medical providers regarding the course of his medical treatment for constipation. Even when the facts are viewed in the light most favorable to Stallings, there is no evidence that Clarke or Ottey[8] acted with requisite deliberate indifference to his medical needs or intentionally denied him necessary medical treatment.

**The Warden**

Correctional defendant Bishop has filed his declaration and verified exhibits. The exhibits demonstrate that on February 11, 2014, Stallings filed a Request for Administrative Remedy ("ARP"), complaining that he had been constipated for 2 years and the medical center was refusing to treat him properly for his pain. (ECF 30-4). Bishop dismissed the ARP after investigation showing that Stallings had been treated by medical providers for his complaints. *Id.* The response also noted Stallings had refused a medication on January 12, 2014, and refused sick call visits on January 25 and February 25, 2014. *Id.*

Stallings filed an appeal on March 14, 2014, disputing the investigation findings and claiming the NBCI medical department was refusing him proper treatment. The response read:

---

[8] Stallings received care from a number of medical providers. (ECF 21-4). Stallings' sole medical encounter with Defendant Janette Clarks occurred on April 22, 2014. (ECF 21-4, p. 33). He does not specifically state the why care provided on that occasion was constitutionally inadequate. Similarly, Stallings does not specify how Dr. Ottey's care amounts to a violation of Eighth Amendment magnitude. The claims against these defendants are also dismissible on this basis.

13

> Your appeal has been investigated and is hereby dismissed. The warden fully addressed your initial complaint. It is up to the medical provider to determine the appropriate diagnostic methods, course of treatment, and medications for your symptoms, not you. You are encouraged to use the sick call process for any future medical issues. No further action is warranted through the ARP process.

(ECF 30-5, p. 3).

As was noted above, in order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (stating that for liability to exist under 42 U.S.C. § 1983, there must be personal involvement by the defendant in the violation alleged). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Under declaration, Bishop states that he has not been involved in, interfered with, or delayed the provision of medical care to Stalling, nor does he have any knowledge of any correctional staff member having done so. (ECF 30-7). Bishop states that his professional responsibilities, as warden, were to oversee the administration of personnel and programs to ensure a safe, efficient and lawful correctional institution. *Id.* Medical care for inmates is provided by private health care contractors and it is beyond the scope of his duties to diagnose or treat medical injuries. *Id.* Bishop attests he is not a trained health care provider, nor does he have any authority to dictate what type of medical treatment an inmate is to receive. *Id.*

As discussed above, Stallings does not demonstrate that medical providers acted with deliberate indifference to his medical needs, or that Bishop intentionally hindered his medical treatment or had knowledge of correctional staff interfering with medical care decisions. It is well established that prison officials are entitled to rely on medical judgments and the expertise of prison physicians and other medical providers concerning the course of treatment deemed

necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Millier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (stating supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel). Thus, there are no genuine issues of material fact presented as to this claim and summary judgment will be granted in favor of Bishop.

## CONCLUSION

For the foregoing reasons, the motions for summary Judgment filed by the medical defendants and Warden Bishop (ECF 21, 30) shall be granted by separate order to follow.

8/27/15
Date

J. Frederick Motz
United States District Judge